UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| v. | ) | Crim. No. 25-cr-10204-DJC |
| SVEN LJAAMO | ) | |

**DEFENDANT'S MOTION FOR CONTINUED RELEASE PENDING SENTENCING OR IN THE ALTERNATIVE TO DEFER ACCEPTANCE OF PLEA**

The defendant, Sven Ljaamo, moves this Court to order his continued release pending sentencing pursuant to 18 U.S.C. § 3145(c). Alternatively, Dr. Ljaamo moves the Court to defer acceptance of his plea until the time of sentencing.

Defense counsel contacted the government prior to submission of this motion to obtain its position. As of this filing, the government has not responded.

**Background**

Dr. Ljaamo is charged in this case with one count each of receipt of child pornography in violation of 18 U.S.C. §§ 2252A(a)(2)(A) and (b)(1) (count one) and possession of child pornography in violation of 18 U.S.C. §§ 2252A(a)(5)(B) and (b)(2) (count two). The charges stem from Dr. Ljaamo's possession of more than three hundred illicit pornographic images. As will be described in far greater detail at his sentencing hearing, Dr. Ljaamo amassed a large collection of pornography that he saved to his electronic devices, most of which featured adults but a percentage of which depicted minors. The materials were discovered following executions of search warrants on his home and office. He anticipates pleading guilty on August 27, 2026 to both charges with a plea agreement pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C). The parties expect to jointly recommend that Dr. Ljaamo receive an incarcerated sentence of 60

months, which is the minimum mandatory term required for a conviction under count one.

By way of background, Dr. Ljaamo is a physician and U.S. Army veteran who served from 1979 to 2005. He is 71 years old and, as described below, has dealt with multiple health issues over the last several months. Up until he was charged in this case, Dr. Ljaamo was working at the VA Hospital in Bedford, where he was employed for 18 years. He has no prior criminal record.

Dr. Ljaamo was arrested on April 23, 2025 and made his initial appearance the same day. He was held in custody pending a detention hearing, which occurred on April 29, 2025. Dr. Ljaamo was released that day subject to numerous conditions. The conditions subject him to electronic monitoring and a daily curfew from 8:00 P.M. to 5:00 A.M. He was also required to surrender his passport to pretrial services and is also not allowed to access the internet. He has remained on release throughout the pendency of the case.[1]

Following his arrest, Dr. Ljaamo recognized that he needed to seek support to both understand the behaviors that led to his charges and ensure that he never repeated them. He voluntarily sought mental health treatment through the VA. After being placed on a waitlist, he was eventually accepted as a patient with Dr. Patricia Sweeney, a clinical psychologist. Dr. Ljaamo began seeing Dr. Sweeney in November 2025 and has met with her on a weekly basis

[1] In the early months of Dr. Ljaamo's case, pretrial services reported potential violations of his conditions of release. Namely, Dr. Ljaamo did not disclose several internet-accessible devices that were in his home and that he had an active U.S. Passport and U.S. Passport Card. Though he was initially unable to locate his travel documents, Dr. Ljaamo was ultimately able to find them and provided them along with two expired travel documents to pretrial services. Pretrial services increased Dr. Ljaamo's supervision to GPS monitoring following these issues. On July 31, 2025, during an unannounced home visit, pretrial services discovered that Dr. Ljaamo's wife had left her laptop in the home after going out while he was still present in the residence, which was also in violation of his conditions. At a show cause hearing before Judge Boal on August 13, 2025, Dr. Ljaamo stipulated to the violations and was released on the same conditions. Since then, he has remained in full compliance with the terms of his pretrial supervision.

ever since, which he intends to continue doing if he remains on release pending sentencing.

**Argument**

Virtually any child pornography-related offense triggers "mandatory" detention, under 18 U.S.C. §§ 3143(a)(2) & 3142(f)(1)(E), after a finding of guilt. 18 U.S.C. § 3145(c) creates an exception to that provision, however, to permit continued release where "exceptional reasons" make immediate detention inappropriate:

> A person subject to detention pursuant to section 3143(a)(2) or (b)(2), and who meets the conditions of release set forth in section 3143(a)(1) or (b)(1), may be ordered released, under appropriate conditions, if it is clearly shown that there are exceptional reasons why such person's detention would not be appropriate.

18 U.S.C. § 3145(c).

"[A] district court has wide discretion in determining what sort of reasons might be sufficiently 'exceptional' so as to render detention inappropriate." *United States v. McCabe*, No. 90-1483, 1991 U.S. App. LEXIS 20448, at *6 (1st Cir. May 8, 1991). In *United States v. Mitchell*, 23 F.3d 1 (1st Cir. 1994), the First Circuit assumed that the district court had the discretion to continue release pending sentencing and observed without comment that the district court had delayed the defendant's surrender for "family considerations" pursuant to § 3145(c). *Id.* at 2; *see also United States v. Weiner*, No. 92-1708, 1992 U.S. App. LEXIS 28794, *9 (1st Cir. July 31, 1992) ("district courts have wide discretion in deciding whether to invoke [section 3145(c)]") (per curiam) (unpub.).

Here, while Dr. Ljaamo may be "subject to detention pursuant to section 3143(a)(2)," he also "meets the conditions of release set forth in section 3143(a)(1)." That is, there is clear and convincing evidence that Dr. Ljaamo is ""is not likely to flee or pose a danger to the community if released." 18 U.S.C. § 3143(a)(1).

Dr. Ljaamo is therefore eligible to remain on release conditions "if it is clearly shown

that there are exceptional reasons why [his] detention would not be appropriate." 18 U.S.C. § 3145(c). District Courts, including those in this District, have found "exceptional reasons" under § 3145(c) for continued release in a wide variety of circumstances. *See e.g., United States v. Quraishi*, No. 22-cr-10306-AK, ECF No. 127, Transcript of Jury Trial on Oct. 10, 2024, at 70-76 (finding that defendant's participation in mental health treatment throughout pendency of case constituted exceptional reason for continued release following conviction for ten-year minimum mandatory child sex offense); *United States v. Boesse*, No. 08-10232-MLW, ECF No. 51, Transcript of Change of Change of Plea Hearing on Jan. 9, 2009, at 35-37 (permitting continued release after a guilty plea and eventual self-surrender in a child pornography case over the government's objection, for reasons including defendant's compliance with release conditions); *United States v. Reyes*, No. CR 21-1723-MV, 2024 U.S. Dist. LEXIS 3138, at *9 (D.N.M. Jan. 5, 2024) (granting release pending sentencing where defendant was "one of the only two primary caretakers of his mother"); *United States v. Dooley*, No. 3:20-cr-32-X (17), 2021 U.S. Dist. LEXIS 89429, at *11 (N.D. Tex. May 11, 2021) (defendant's "valid health-and family-care-related concerns . . ., combined with this compliance to date, including his steady employment, amount to a situation in which Defendant's detention pending his sentencing hearing in three months . . . would not be appropriate"); *United States v. Bondarenko,* W.D. Wash. No. 18-294-RSM, D.E. 100 at 8 (delaying self-surrender date for defendant who "was not convicted of a violent offense, does not have prior criminal history, and has not had issues while supervised by probation and pretrial services") (Jan. 12, 2021).

Dr. Ljaamo has a significant medical issue that required ongoing care and evaluation. Dr. Ljaamo underwent surgery last March to treat Dupuytren's disease, a progressive hand condition that causes one or more fingers to curl inward, making it difficult to straighten them. The

condition manifested in his left hand, which is his dominant one. The surgery was initially considered successful. Dr. Ljaamo began undergoing physical therapy in the spring after his cast was removed. However, in the last month, his hand condition has gradually deteriorated. Earlier this month, Dr. Ljaamo met with his orthopedic surgeon and occupational therapist and reported gradual loss of sensation in the fingers of his left hand, which was affecting its function. He was scheduled for an MRI on September 2, 2026 and a follow-up appointment with his orthopedic surgeon on September 8, 2026. Both appointments were the soonest available. Since then, Dr. Ljaamo has experienced palpable loss of muscle mass in his left hand and further loss of sensation in the fingers on his left hand. He reported the increasingly severe symptoms to his physicians in the hopes of addressing the issue sooner. His physicians have informed him that they need to see the results of his MRI to determine whether there is a mass in his left hand that will require surgical intervention to remove. A sooner MRI appointment was not available, and he remains scheduled for September 2.[2]

Ordering Dr. Ljaamo's continued release so he may address this potentially significant medical issue constitutes an exceptional reason to permit him to remain on release following his guilty plea. Dr. Ljaamo has informed his physicians that the condition in his left hand is worsening, and that the deterioration has accelerated over the past month. It stands to reason that the sooner he receives the scheduled MRI, the sooner that his physicians can determine how best to address the issue. The hope is that if the condition requires surgery, that procedure can be completed expeditiously given that he will likely face sentencing in late November or December.

---

[2] The emerging problem with his left hand is Dr. Ljaamo's most immediate medical concern. It is, however, not the only medical issue he has faced in recent months. Dr. Ljaamo recently had a lesion removed that was positive for squamous cell carcinoma. Fortunately, the cancerous growth was removed without the need for further treatment. This is the third bout of skin cancer that Dr. Ljaamo has endured and he undergoes yearly screenings for the disease given his history.

If the condition is not treated, Dr. Ljaamo faces the possibility of losing further function in his left hand, which his dominant one and the one that he writes with. Even if he could theoretically be transported for medical evaluation and treatment from custody, doing so would assuredly delay his medical care by weeks if not months. It is also not as if Dr. Ljaamo would be remanded to a Bureau of Prisons facility with adequate medical staff; he would be held by the U.S. Marshals at either Wyatt or the Plymouth County jail, neither of which can adequately address this issue that he is scheduled to receive care for in the next week.

Additionally, Dr. Ljaamo has been engaged in weekly mental health therapy since November 2025 with his psychologist, Dr. Sweeney. Detaining him at this point would disrupt his ongoing mental health treatment. Dr. Ljaamo's efforts at mental health care over the past year have been instrumental in his long-term plan to never again commit the types of acts that brought him before the Court and avoid recidivating upon release. Dr. Ljaamo's prospects for future success depend on him continuing to manage his mental health. Uprooting him from the community, where his therapeutic supports are located, is entirely counterproductive.

Finally, Dr. Ljaamo's continued release is appropriate given his adherence to his conditions of release for the majority of the time that this case has been pending. While he acknowledges that there were missteps at the outset of his release, Dr. Ljaamo has dutifully adhered to his conditions since. He has never had an issue with his GPS monitor or curfew. Likewise, he has never left Massachusetts or attempted to do so. That he is prepared to appear before the Court on his own accord on August 27 and plead guilty knowing that he faces a mandatory term of five years in prison indicates that he will not flee and intends to address the resolution of this case appropriately. He simply wants to be able to address any lingering health concerns before he begins serving his sentence. These exceptional reasons justify his continued

release.

**Conclusion**

For the foregoing reasons, Dr. Ljaamo moves the Court to allow this motion and release him on the same conditions of release that have been in place throughout the pretrial phase of this matter. Alternatively, Dr. Ljaamo moves the Court to defer acceptance of the plea so that he remain at liberty and address his pending medical issues prior to sentencing.

SVEN LJAAMO
By his attorney,

Daniel J. Gaudet

Daniel J. Gaudet, B.B.O. # 688120
Carney, Gaudet & Carney
20 Park Plaza, Suite 614
Boston, MA 02116
617-933-0350
DGaudet@CarneyDefense.com

August 25, 2026

Certificate of Service

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on the above date.

Daniel J. Gaudet

Daniel J. Gaudet